NEUBAUER, C.J.
*213 ¶1 Robert P. Vesper appeals from a judgment of conviction and an order denying his postconviction motion asserting that the circuit court erred when it imposed a fine and that new factors warranted a modification of his sentence. Because the record supports imposition of the fine and no new factors exist that warrant a sentence modification, we affirm.
BACKGROUND
¶2 After serving one year in prison for his sixth operating a motor vehicle while under the influence (OWI) offense, Vesper was released in October 2014 to extended supervision. In March 2015, Vesper drove drunk, resulting in charges for a seventh OWI offense, WIS. STAT. § 346.63(1)(a)
*422 (2013-14),[1] operating while *214 revoked, WIS. STAT. § 343.44(1)(b), and operating while under a prohibited alcohol concentration (PAC), § 346.63(1)(b).
¶3 In May 2015, per agreement, Vesper pled guilty to OWI. In exchange, the State recommended "unspecified prison to be served consecutive to any other sentence" and took no position on a fine. The State also dismissed, but read in, the operating while revoked count. The PAC count was dismissed as a matter of law.
¶4 The circuit court accepted the plea and, after hearing from the parties, including a statement read by Vesper, proceeded to sentencing. The court noted that it had read the letters submitted on Vesper's behalf and agreed with them that he is a good person. The court acknowledged some circumstances that were mitigating, such as Vesper's cooperative attitude, the absence of an accident, and his taking responsibility for his actions. But the court also pointed out that, given his prior six convictions, he "should have known better" than to act "selfish[ly]" and "put[ ] at risk" others who are out on the road. The court found several factors to be aggravating: Vesper's blood-alcohol content (BAC) was 0.139, "well beyond" his legal limit of 0.02; he drove drunk shortly after being released from prison for his sixth OWI conviction; he was still on extended supervision at the time; and he should not have been driving at all without a license. The court stated that Vesper was "an alcoholic" who had "not wrestled with [his] demons well." The court noted that it had considered the sentencing objectives of the gravity of the offense and the character of the defendant, but highlighted the protection of the community in light of Vesper's many OWI convictions and that the last one was recent.
*215 ¶5 The circuit court then sentenced Vesper to fifty months of initial confinement (out of a maximum of sixty) and five years of extended supervision (the maximum). See WIS. STAT. §§ 346.65(2)(am)6., 939.50(3)(g). It ordered the sentence to run "consecutive to whatever [Vesper is] serving." The court imposed a $1900 fine (out of a maximum of $25,000). After being informed by counsel, it also ordered seventy-six days of sentence credit.
¶6 Two months later, Vesper's extended supervision for his prior (his sixth) OWI conviction was revoked. As a result, he was reconfined for four years and four days.
¶7 The next month, the Wisconsin Department of Corrections informed the court that the seventy-six-day sentence credit duplicated a credit that Vesper received for his prior OWI conviction. No one contested this. The court amended the judgment to remove the credit.
¶8 In December 2016, Vesper filed a postconviction motion arguing that the circuit court should vacate the fine because the court had not separately explained why it was imposed or determined his ability to pay. He also asserted that the court should reduce his sentence because the length of his reconfinement and the removal of his sentence credit were new sentencing factors. The court denied the motion and Vesper appeals.
DISCUSSION
Standard of Review-Sentencing
¶9 "The standards governing appellate review of an imposed sentence are well settled. A circuit court *216 exercises its *423 discretion at sentencing, and appellate review is limited to determining if the court's discretion was erroneously exercised." State v. Taylor , 2006 WI 22, ¶17, 289 Wis. 2d 34, 710 N.W.2d 466 (footnote omitted); State v. Gallion , 2004 WI 42, ¶¶17-18, 270 Wis. 2d 535, 678 N.W.2d 197 (in line with a strong policy of noninterference, we review a sentence only for an erroneous exercise of discretion). If the record "contains evidence that the circuit court properly exercised its discretion, we must affirm." State v. Kuechler , 2003 WI App 245, ¶8, 268 Wis. 2d 192, 673 N.W.2d 335. "Proper sentencing discretion is demonstrated if the record shows that the court examined the facts and stated its reasons for the sentence imposed, using a demonstrated rational process." Id. (citations omitted).
¶10 A circuit court's sentencing decision carries "a strong presumption of reasonability." Taylor , 289 Wis. 2d 34, ¶18, 710 N.W.2d 466 (citation omitted). That presumption is warranted because a circuit court stands in the best position to consider the relevant sentencing factors. Id. ; State v. Ziller , 2011 WI App 164, ¶12, 338 Wis. 2d 151, 807 N.W.2d 241. Consequently, the defendant bears the burden of showing that the sentence is unjustified or unreasonable. Ziller , 338 Wis. 2d 151, ¶12, 807 N.W.2d 241.
¶11 The principal objectives of a sentence include, but are not limited to, protection of the community, punishment of the defendant, deterrence, and rehabilitation. Gallion , 270 Wis. 2d 535, ¶40, 678 N.W.2d 197. In order to meet the specified objectives, the court should consider all relevant factors, the primary ones being the gravity of the offense, the character of the defendant, *217 and the need to protect the public. State v. Ziegler , 2006 WI App 49, ¶23, 289 Wis. 2d 594, 712 N.W.2d 76. Other factors may also be relevant.[2] Id. The court need not address each possible factor, but rather only those relevant to that case. Id. The weight given to each factor is within the sentencing court's broad discretion. Id.
Imposition of the Fine
¶12 Vesper argues that the circuit court erred twice when it imposed the $1900 fine: the court failed to (1) state the reasons for the fine separately from those stated for the confinement and (2) determine his ability to pay. We address each in turn.
Lack of a Separate Explanation for the Fine
¶13 Vesper asserts that, when a court imposes both imprisonment and a fine, the court must provide a separate explanation for each penalty. Because the circuit court here, at the end of the sentencing colloquy, stated "$1900 fine" with no separate explanation, Vesper argues that the court erroneously exercised its discretion. We disagree. As we held in Kuechler , when the court's sentencing colloquy supports both imprisonment and the fine, no separate explanation of the fine is needed. Kuechler , 268 Wis. 2d 192, ¶10, 673 N.W.2d 335.
*218 ¶14 The circumstances in Kuechler largely mirror those here. At sentencing for a seventh OWI conviction, the court determined that several circumstances were aggravating: high BAC, criminal history that included repeated and recent *424 OWIs, driving while out on bond for another OWI, and driving while having had his license revoked. Id. , ¶3. The court noted some circumstances that were mitigating: the defendant was cooperative and remorseful, he had addressed some of his problems, and he had a good employment history. Id. , ¶4. The court ultimately concluded that "this is an aggravated case" and that a sentence less than what the local sentencing guidelines suggested would "unduly depreciate the seriousness of this offense as well as not adequately protect society." Id. , ¶3. In accordance with the guidelines, the court imposed both prison time and a $6800 fine. Id. , ¶5 & n.2. The court did not otherwise explain why it imposed the fine.
¶15 On appeal, the defendant argued that the court's selection of the fine per the guidelines was statutorily and constitutionally impermissible and reflected a "prohibited mechanistic approach." Id. , ¶¶9-13. We rejected this argument. Although the statute authorizing the guidelines refers to PAC, not OWI, offenses, a circuit court is permitted to apply them in OWI cases provided that it does not do so "robotically" and as the sole basis for a sentence. Id. , ¶10 ; see WIS. STAT. § 346.65(2m)(a) (guidelines apply to PAC convictions);[3] see also State v. Jorgensen , 2003 WI 105, ¶27, 264 Wis. 2d 157, 667 N.W.2d 318 (circuit court may refer to the guidelines for OWI convictions, *219 as OWI and PAC offenses are similar and the sentencing factors for one are relevant to the other). We held that the court's proper "sentencing colloquy applie[d] to both the prison time imposed and to the fine," and a court need not "give separate reasons for imposing jail or prison time than it gives for imposing a fine." Kuechler , 268 Wis. 2d 192, ¶10, 673 N.W.2d 335.
¶16 Here, as in Kuechler , the circuit court discussed factors both aggravating (high BAC of 0.139, repeat offender, and driving while on extended supervision and without a license) and mitigating (cooperative and remorseful attitude and taking responsibility for his actions), but emphasized the aggravating. Throughout its colloquy, the court explicitly and appropriately considered protection of the community (Vesper continued to put others at risk), the gravity of the offense (repeated offenses even when prohibited from driving), and the character and rehabilitation of Vesper (despite being a good person, he has not dealt well with his serious alcohol problem).
¶17 Although not explicitly citing to the local sentencing guidelines, the circuit court applied the analysis they encompass. See WIS. THIRD JUDICIAL DIST. OWI/PAC SENTENCING GUIDELINES , Seventh-Ninth Offense ( THIRD JUDICIAL DIST. OWI/PAC SENTENCING GUIDELINES COMM . 2015). For a seventh offense in an aggravated case and a BAC between 0.08 and 0.169, the guidelines recommend a fine of $1900, exactly what was imposed here. Id.[4] They also recommend initial confinement of forty-two to fifty-four months (fifty were imposed) and license revocation and ignition *220 interlock device for thirty-six months, all of which match Vesper's sentence.[5] Id. It *425 was appropriate for the court to apply the guidelines' analysis, see Kuechler , 268 Wis. 2d 192, ¶10, 673 N.W.2d 335, which supports the terms of Vesper's sentence, as it integrates sentence options, ranges, and the connection between the penalties of imprisonment and a fine. See State v. Ramel , 2007 WI App 271, ¶24, 306 Wis. 2d 654, 743 N.W.2d 502.
¶18 Whether the court explicitly applied the guidelines is of no matter. It is "well settled" that the discretionary process of reasoning "must depend on facts that are of record or that are reasonably derived by inference from the record and a conclusion based on a logical rationale founded upon proper legal standards." Taylor , 289 Wis. 2d 34, ¶¶17, 30, 710 N.W.2d 466 (citing McCleary v. State , 49 Wis. 2d 263, 277, 182 N.W.2d 512 (1971) ). When a court must select an amount between $0 and $25,000, the chances that the court will coincidentally choose one particular amount (i.e., $1900) are virtually nil. As a reviewing court, we are usually satisfied with drawing inferences from a record that are reasonable, and sometimes a record will allow us to draw inferences that are downright compelling, but rare is the record, such as this one, where we can draw an inference that is nearly a certainty. However, even *221 without explicit or implicit reliance on the sentencing guidelines, the court's colloquy appropriately discussed the sentencing objectives and relevant factors, all of which squarely supported the imposition of the $1900 fine which, just as is the case with the applicable guideline, is both reasonable and justified.
¶19 Based on the foregoing, we conclude that the court's sentencing colloquy sufficiently supported the imposition of the fine and there was no need for a separate explanation. In other words, the colloquy applied equally to both the term of imprisonment and the fine.
¶20 Vesper relies on Ramel , asserting that it requires a separate, stand-alone explanation of the fine. In that case, after pleading guilty to third-degree sexual assault, the defendant was sentenced to confinement, extended supervision, and a $1000 fine. The circuit court made no findings with regard to the defendant's ability to pay a fine and offered no explanation as to why it imposed one. The Ramel court observed that, without knowing a defendant's ability to pay a fine, it is difficult to determine whether the fine can help meet the sentencing objectives. Ramel , 306 Wis. 2d 654, ¶¶13-14, 743 N.W.2d 502. After searching the record for information showing an ability to pay and for "some explanation" to support imposition of the fine, the Ramel court found none and, therefore, vacated the fine. Id. , ¶¶9, 14, 26-27.
¶21 Ramel is unavailing for Vesper. Key to Ramel was the lack of any information that the defendant could pay a fine, "regardless of the amount." Id. , ¶¶26-27. Stuck in the position of a reviewing court with nothing to review, the Ramel court made the noncontroversial point that the record must contain "some" explanation-and not necessarily a separate *222 explanation-that shows that the sentencing court exercised its discretion when imposing the fine.
¶22 While the lack of any such information steered the result in Ramel , there is no lack of information in this case to show that Vesper has the ability to pay (as discussed in the next section). Moreover, Ramel 's suggestion that the sentencing objectives *426 and chosen alternatives could differ in light of the defendant's ability to pay does not apply here since there is no indication that the sentencing objectives set forth in the court's colloquy were not furthered by both penalties. See id. , ¶13.
¶23 Indeed, Ramel pointed out that consultation of sentencing guidelines, as was done in Kuechler and was effectively done here, makes separate explanations for incarceration and a fine a "meaningless exercise," as the guidelines "had already established the linkage between the two forms of punishment." Ramel , 306 Wis. 2d 654, ¶24, 743 N.W.2d 502.
¶24 Our conclusion that the court's colloquy applies equally to the fine also comports with the well-established rule that a reviewing court must search the record to determine if it supports the circuit court's sentencing decision-a rule that was reaffirmed and applied by Ramel itself. See McCleary v. State , 49 Wis. 2d 263, 282, 182 N.W.2d 512 (1971) (a reviewing court has both the duty to avoid interfering with the sentencing decision and the duty to affirm that decision if sustainable by a search of the record); Ramel , 306 Wis. 2d 654, ¶¶9, 18 n.7, 26, 743 N.W.2d 502. We will not require a do-over by the court when the record supports its sentencing decision.
*223 ¶25 Vesper, and the Dissent, seize upon Ramel 's statement that "under Gallion some explanation of why the court imposes a fine is required." Ramel , 306 Wis. 2d 654, ¶14, 743 N.W.2d 502. Adding "separate" into the above phrase misreads the case, divorces it from the overarching principles of sentencing set forth in Gallion and McCleary , and in the end, improperly elevates form over substance. The purpose of requiring an on-the-record explanation of the court's sentencing decision is to enable the defendant, and a reviewing court upon challenge, to determine whether the sentence is unreasonable or unjustified. The complementary process on review of searching the record has the same aim. Here, the defendant does not even pretend to argue, much less meet his burden of proof to show, that the fine was unreasonable or unjustified. See Taylor , 289 Wis. 2d 34, ¶18, 710 N.W.2d 466 ; Ziller , 338 Wis. 2d 151, ¶12, 807 N.W.2d 241. The defendant's challenge is strictly to the form-not the substance. Ramel very clearly forsakes requiring our sentencing courts to engage in "meaningless exercises" by mechanistically uttering "magic words" such as "for the same reasons" before imposing the fine.[6] See also Ziller , 338 Wis. 2d 151, ¶¶12-13, 807 N.W.2d 241 (court need not explicitly and separately explain why it imposed a DNA surcharge; "[w]hat is obvious need not be repeated"); State v. Berggren , 2009 WI App 82, ¶45, 320 Wis. 2d 209, 769 N.W.2d 110 (court need not state separately its reasons for choosing a consecutive rather than a concurrent sentence; the emphasis is on an explanation of the relevant factors that influenced *224 the sentence); State v. Owens , 2006 WI App 75, ¶9, 291 Wis. 2d 229, 713 N.W.2d 187 (court need not separately explain the reasons for denying eligibility to the Earned Release Program).[7] *427 ¶26 In sum, it is our duty to defer to the discretion of the sentencing court when, after considering the relevant facts and factors of the particular case, it has set forth on the record a rational and explainable basis for its decision. In asking that the record have some explanation for the fine, Ramel sought to guard against guesswork, Ramel , 306 Wis. 2d 654, ¶14, 743 N.W.2d 502, and here there is no need to guess. The defendant has not met his burden to show that the fine is unreasonable or unjustified. The court's colloquy memorialized a reviewable and appropriate exercise of discretion for the sentence, including the fine. Ramel mandates nothing more.
Ability to Pay the Fine
¶27 Vesper argues that the circuit court erred by not determining whether he had the ability to pay the fine. He asserts that his weak financial condition is shown by the court's appointment of counsel via the *225 county and his qualifying as indigent under the public defender standards at the time of his postconviction motion.
¶28 Because negative consequences may result if a defendant fails to fully pay an ordered fine, a circuit court must consider a defendant's ability to pay. Id. , ¶15. In addition to considering the defendant's economic status, whether a defendant has the ability to pay should contemplate the length of the time to pay-the duration of the sentence, including any term of probation, imprisonment, and extended supervision. Id. If the court did not make any findings with regard to the ability to pay, we will search the record to determine whether it supports the court's sentencing decision. Id. , ¶26.
¶29 Vesper again relies on Ramel . In that case, other than a vague and unverifiable employment reference, the "record [was] devoid of any information about" the defendant's financial condition. Id. , ¶3. Because the record did not show an ability to pay any fine, the fine was vacated. Id. , ¶27 ; see also Kuechler , 268 Wis. 2d 192, ¶14, 673 N.W.2d 335 (no hearing on the ability to pay was held and the existing record was "unsatisfactory," resulting in a remand to the circuit court for that determination).
¶30 We conclude that, unlike Ramel and Kuechler , the record here adequately shows that Vesper has the ability to pay the fine imposed. The State notes that, because Vesper need not pay off the fine immediately and will be allowed to pay over the course of the total sentence, we should bear in mind that Vesper will be serving fifty months of initial confinement and five years of extended supervision. Over the five years of *226 extended supervision, Vesper would settle the fine by paying $31.67 monthly; over the course of the total 110-month sentence, the monthly payment would be $17.27.[8]
¶31 The record satisfactorily shows that Vesper has the ability to earn an income to pay a fine that, within the context of being paid over a period of years, is fairly light. After being released on extended supervision for his prior OWI, Vesper sought and found a job at a Menards store in short order. He worked full time, earning $11 an hour ($1760 per month). For consideration at sentencing, a fellow employee submitted *428 a letter, extolling Vesper as an "excellent" employee, always prompt and "phenomenal" with customers. Vesper's counsel described him at sentencing as "very intelligent" and "very well spoken." A county pretrial screening report indicates that he has "[s]ome [c]ollege" education.
¶32 We further note that Vesper's wife earns $3000 per month. Although his wife is not responsible for paying the fine, her income is relevant to show that Vesper is not solely responsible for supporting their two children (ages twelve and fourteen at the time) and generally maintaining the household. That spousal support buttresses Vesper's ability to pay the fine from the income he earns.
¶33 Based on the foregoing, the record contains sufficient information to conclude that Vesper is able to pay on average about $17 per month over the length of his total sentence. That amounts to less than one percent of his former income.
*227 ¶34 Vesper points out that, given his poor financial status, the circuit court appointed counsel for him and that the public defender considers him to be indigent. While those facts are relevant, they need context. Initially, the public defender found him not to be indigent, but appears to have later reconsidered as Vesper's financial condition deteriorated while he remained in custody. Similarly, the circuit court also determined at first that Vesper's income was too high for county-appointed counsel, but later reconsidered and appointed counsel. The court, however, made that appointment on a "cost reimbursement basis," reflecting its belief that Vesper will eventually be able to repay the county.
¶35 Moreover, a determination that a defendant is presently indigent for the purpose of providing paid-for counsel differs from a determination that a defendant, though presently indigent, has the future earning capacity to pay a fine over a period of years. Although he may not have been able to presently afford an attorney or presently pay off the fine, Vesper's employment history, education level, and spousal support for joint expenses adequately show that he will be able to pay a $1900 fine over the course of more than nine years. See, e.g. , State v. Milashoski , 163 Wis. 2d 72, 88-89, 471 N.W.2d 42 (1991) (concluding that defendant, though presently indigent, would be able to pay a $15,000 fine in light of his employment history and prospects).
Modification of the Sentence
¶36 Vesper asserts that the combination of two new factors warrant a modification of his sentence. After sentencing, the seventy-six-day sentence credit was removed from the judgment of conviction and the *228 length of his reconfinement from his prior OWI conviction was announced-four years and four days.
¶37 Wisconsin circuit courts generally have inherent authority to modify criminal sentences. State v. Harbor , 2011 WI 28, ¶35, 333 Wis. 2d 53, 797 N.W.2d 828. A court may modify a sentence based upon the defendant's showing of a "new factor." Id. Determining whether a sentence should be modified based on a new factor has two parts: (1) whether a new factor exists and, if it does, (2) whether it justifies sentence modification. State v. Norton , 2001 WI App 245, ¶18, 248 Wis. 2d 162, 635 N.W.2d 656.
¶38 A new factor is a fact or set of facts "highly relevant" to sentencing, but not known to the court, or not in existence, at the time of sentencing. Id. , ¶9 (citation omitted). The defendant bears the burden of establishing a new factor by clear and convincing evidence. Id. Whether a new factor exists is a question of law which we decide de novo. Id. , ¶8. Whether *429 a new factor warrants a modification, however, is a question within the circuit court's discretion which we review for an erroneous exercise of that discretion. Id.
¶39 Vesper concedes that the circuit court did not rely on the amount of the sentence credit when imposing the sentence, but argues that, when its removal is coupled with the lengthy reconfinement, it is "highly relevant" to the imposition of his sentence. We disagree.
¶40 At the outset, we recall that the circuit court followed the sentencing guidelines. Even if the court knew about the credit removal and the length of *229 reconfinement at the time of sentencing, it is unlikely that the court would have ordered a different sentence. The guidelines do not address or consider credits-whether granted or removed-nor reconfinements from prior cases. To the extent a prior sentence or reconfinement is relevant, the most direct reference by the guidelines to a prior OWI is whether the prior OWI was recent, which is then considered to be an aggravating factor.
¶41 In any event, Vesper's duplicate sentence credit is not a new factor. As acknowledged by Vesper, the court had already imposed his sentence when it was told that a credit should be issued. It was not relevant, much less "highly" relevant, to the court's sentencing considerations. We further note that Vesper is still receiving the credit, just as part of a sentence in a different case.
¶42 The reconfinement is also not a new factor. Just before imposing sentence, the court mentioned three times that Vesper was on extended supervision at the time of his offense in this case. The court stated that Vesper was "in violation of [his] extended supervision" when he drove drunk. Despite knowing that Vesper was subject to reconfinement, the court did not suggest that the length of a possible reconfinement was relevant to the court's sentencing decision. The court instead ordered Vesper's sentence to run "consecutive to whatever [Vesper is] serving." Because his potential reconfinement or its length was not highly relevant to his sentence, Vesper has not clearly and convincingly shown that it was a new factor. See generally Norton , 248 Wis. 2d 162, ¶10, 635 N.W.2d 656 ("[R]evocation of probation in another case does not ordinarily present a new factor.").
By the Court. -Judgment and order affirmed.
HAGEDORN, J. (concurring in part; dissenting in part).
*230 ¶43 A certain tension underlies appellate review of sentencing decisions. On the one hand, State v. Gallion -concerned with formulaic magic words and the lack of demonstrated rationale in sentencing decisions-tells us that what was in the past "satisfied with implied rationale must now be set forth on the record."[1] State v. Gallion , 2004 WI 42, ¶38, 270 Wis. 2d 535, 678 N.W.2d 197. On the other hand, McCleary v. State -ostensibly reaffirmed by Gallion[2] -tells appellate courts to "search the record to determine whether in the exercise of proper discretion the sentence imposed *430 can be sustained." McCleary v. State , 49 Wis. 2d 263, 282, 182 N.W.2d 512 (1971). The present case lies at the heart of this tension.
¶44 The majority affirms the circuit court's imposition of a criminal fine, concluding that (1) the circuit court adequately explained its rationale for the fine, (2) the record supports a finding that Vesper is able to pay that fine, and (3) no new factors warrant sentence modification. I join the court's opinion with respect to the second and third conclusions. However, my read of the controlling common law compels me to part ways with the majority on the first issue because *231 the circuit court failed to set forth on the record "a 'rational and explainable basis' " for its decision to impose a criminal fine. See Gallion , 270 Wis. 2d 535, ¶76, 678 N.W.2d 197 (citation omitted). In particular, State v. Ramel requires circuit courts to explain the reasons for imposing a fine-as distinct from the sentence more generally-and for this rationale to be documented on the record. See State v. Ramel , 2007 WI App 271, ¶14, 306 Wis. 2d 654, 743 N.W.2d 502. It appears to Gallion ize, if you will, the decision to impose a criminal fine. For my part, I question whether Gallion requires this, and would likely uphold the circuit court's imposition of the fine absent our decision in Ramel . But that is not how I read Ramel .
¶45 When making a sentencing decision, Gallion mandated that circuit courts must, "by reference to the relevant facts and factors, explain how the sentence's component parts promote the sentencing objectives." Gallion , 270 Wis. 2d 535, ¶46, 678 N.W.2d 197. But more than that, it specified that this "linkage" must be stated "on the record." Id. Gallion did not compel courts to go into detail as to why they chose four years of initial confinement rather than five, or two years of extended supervision as opposed to four. See id. , ¶49. But it did make clear that "implied reasoning rather than ... an on-the-record explanation for the particular sentence" is no longer sufficient. See id. , ¶¶50-51. While some have criticized appellate courts for not taking Gallion 's directives seriously, by and large, the sentencing decisions this court sees are almost always thoughtful, considered, and indeed, explained on the record with reference to the proper factors. In this respect, Gallion appears to have accomplished much of what it intended. And I suspect the administration of justice is all the better for it.
*232 ¶46 In the fourteen years since Gallion was decided, there has been a creeping effort to Gallion ize individual component parts of a global sentence, rather than to require the demonstrated sentencing rationale only more generally. We saw this in State v. Cherry , which held that the court must explain the reasons for imposing a DNA surcharge for offenses prior to the recent legislative revisions.[3] State v. Cherry , 2008 WI App 80, ¶9, 312 Wis. 2d 203, 752 N.W.2d 393. The court held that the statute authorizing imposition of a DNA surcharge "clearly contemplates the exercise of discretion by the trial court," and that both the statute and Gallion require the court to "set forth in the record the factors it considered and the rationale underlying its decision for imposing the DNA surcharge in that case." Cherry , 312 Wis. 2d 203, ¶9, 752 N.W.2d 393. We also saw it recently in State v. Helmbrecht , where this *431 court held that sentencing courts must explain the reasons for the grant or denial of expunction specifically. State v. Helmbrecht , 2017 WI App 5, ¶12, 373 Wis. 2d 203, 891 N.W.2d 412 (2016). The court again relied on the separate statute authorizing expunction ( WIS. STAT. § 973.015(1m)(a)1. ) and the requirements of Gallion . See Helmbrecht , 373 Wis. 2d 203, ¶12, 891 N.W.2d 412. The sentencing record regarding the circuit court's expunction decision, we held, must "reflect the process of reasoning articulated in Gallion ." Helmbrecht , 373 Wis. 2d 203, ¶12, 891 N.W.2d 412. *233 ¶47 Similarly, in Ramel , this court appeared to Gallion ize the imposition of a criminal fine. We overturned the imposition of a criminal fine in that case in part because there was no finding of an ability to pay. However, we also expressly discussed the circuit court's failure to put on the record a separate rationale for imposing a fine:
A fine that an offender has the ability to pay may satisfy sentencing objectives the trial court has found to be material and relevant to the particular defendant. Here, however, with no explanation from the sentencing court of how the fine imposed advanced those objectives, we are left to guess as to what those objectives might be in relation to the fine. Gallion requires that we do more than guess. While we do not hold that Gallion requires a trial court to explain the reason for a specific amount of a fine (as it is likewise not required to explain a specific time of incarceration), we do conclude that under Gallion some explanation of why the court imposes a fine is required.
Ramel , 306 Wis. 2d 654, ¶14, 743 N.W.2d 502 (citations omitted).
¶48 The majority rejects the notion that a "separate" explanation for criminal fine is needed. Majority, ¶21. Though this is a plausible interpretation of State v. Kuechler , 2003 WI App 245, 268 Wis. 2d 192, 673 N.W.2d 335, when read in isolation, it ignores the fact that our published, binding decision in Ramel explicitly addressed this position and rejected it. The State argued in Ramel , based on Kuechler no less, that "[t]here is no requirement that a court give separate reasons for imposing jail or prison time than it gives for imposing a fine and that [t]he trial court's sentencing colloquy applies to both the prison time imposed and to the fine." Ramel , 306 Wis. 2d 654, ¶22, 743 N.W.2d 502 (emphasis added; citation omitted). Wrong, we said. The State *234 had read our statements in Kuechler "too narrowly." Ramel , 306 Wis. 2d 654, ¶22, 743 N.W.2d 502. Instead, we explained:
Once a trial court has determined whether the circumstances are aggravated or mitigating, the length of incarceration and the fine are determined on the [sentencing guidelines] grid. Accordingly, when the trial court in Kuechler explained its reasons for determining that the circumstances were aggravated, and indicated it was using the guidelines, for the supreme court to have further required that it also provide separate explanations of its reasons for imposing a fine and for incarceration would have only compelled the trial court to perform an essentially meaningless exercise as the guidelines had already established the linkage between the two forms of punishment.
Ramel , 306 Wis. 2d 654, ¶24, 743 N.W.2d 502.
¶49 Several clear principles emerge from Ramel . First, Ramel rejected the idea that a single stated rationale in the sentencing colloquy can automatically be applied to both the prison time and the fine. Id. , ¶22. Second, and relatedly, Ramel *432 rejected the proposition that the court need not give a separate explanation for the criminal fine. Id. While the majority may not believe Gallion requires this (an argument I am sympathetic with too as noted below), Ramel says otherwise. The rationale for the fine-the "linkage" between the fine and the facts, factors, and objectives justifying its imposition-cannot just be impliedly subsumed in the circuit court's global sentencing remarks. Third, the separate explanation need not be a formula of magic words; substance trumps form. Kuechler , as interpreted by Ramel , stands for the proposition that where the circuit court "indicated it was using the *235 guidelines,"[4] and where the guidelines inherently establish the link between incarceration and fines due to the nature of the offense and other aggravating and mitigating factors, a sufficiently specific explanation for imposing the fine has been offered on the record consistent with Gallion .
¶50 In our present case, citing McCleary , the majority "searches the record" and infers that the circuit court most likely relied on sentencing guidelines. The evidence the majority requisitions for this conclusion is convincing. Since that appears to be so, the majority reasons, no separately stated rationale for the fine is necessary. Majority, ¶¶17, 21.[5] Even if the majority's deduction is correct, its conclusion does not follow.
*236 ¶51 As a preliminary matter, I am concerned that in its effort to "search the record," the majority creates a rationale supporting the circuit court's decision that was not even mentioned by the circuit court or developed by the State, and consequently was not briefed by any parties. Vesper will undoubtedly be disconcerted to know he is losing on a legal ground announcing a clarification of the law that he has not had a chance to consider or respond to.[6]
¶52 More to the point, Ramel fairly read does not permit this outcome. Ramel tells us that the rationale for a fine must be separately stated on the record , a la Gallion . Simply looking to the court's global *433 sentencing remarks does not cut it. Ramel tells us that the circuit court in Kuechler satisfied this standard because the record reflected-quite explicitly-that the fine amount was based on sentencing guidelines that already linked the nature of the crime with the decision to impose a criminal fine. While I can see how the majority gets to its decision, I do not see how the law that binds us permits the majority's outcome. If Gallion means what it says-that an explicit rather than implied rationale is required-and Ramel means *237 what it says-that the same principle applies to the circuit court's imposition of a criminal fine-then a "search the record" appellate review for an implied rationale is not consistent with the law. In other words, McCleary may allow us to search for reasons to sustain the circuit court's decision generally, but Ramel does not allow us to infer a rationale for the circuit court's decision to impose a fine where one is not stated on the record. Rather than follow what appears to be Ramel 's clear command, the majority searches the record and devises an implied rationale not argued by the parties that could have supported the circuit court's reasoning, even though that reasoning is not on the record.
¶53 To be sure, I am sympathetic to the majority's view on a number of fronts. First, the mandate for appellate courts is not entirely clear. What are we to make of Gallion 's requirement that what was once implied must now be expressly stated on the record when McCleary -which is still governing law as well-pronounces that we must search the record to find reasons to support the circuit court's exercise of discretion? So which is it? Must the reasons be stated, or must we look for implied or inferred reasons in the record?[7]
¶54 Second, while I understand this court's decision in Ramel , it could be viewed as overly burdensome and unnecessary for courts to articulate a separate rationale for the criminal fine. Nothing in the statutes appears to require such specificity. Rather, this is a common-law dictate designed to ensure justice is done and to ensure sentencing decisions are adequately reviewable by appellate courts. In the real *238 world, an overly formalistic requirement that everything be on the record does not always ensure that justice is done. Suppose we are more than confident that sentencing guidelines were relied upon. Sending this back to the circuit court when the rationale is clear makes little sense-a sentiment no doubt motivating the majority's reasoning. Even where we are not so sure, the components of a global sentence present circuit courts with all sorts of considerations, including determining periods of imprisonment and extended supervision, conditions for extended supervision, opportunities to participate in substance abuse programming in prison, participation in the Earned Release Program, making expunction available, and of course, the imposition of a criminal fine. I question the need to require circuit courts to separately state a specific rationale for imposing a fine so long as the sentence as a whole reflects a considered, rationale process that takes the proper factors into account.
¶55 By way of illustration, suppose a circuit court sentencing someone for a felony thoughtfully examines all relevant factors, perfectly considering any aggravating or mitigating factors, possibilities of rehabilitation, etc. The circuit court then imposes a sentence of ten years' initial confinement, followed by eight years' extended supervision. Gallion itself is clear that the court need not explain why it *434 chose ten and eight years respectively, instead of five and four years, or something else. See Gallion , 270 Wis. 2d 535, ¶49, 678 N.W.2d 197. Though no specific explanation for arguably the most significant aspect of a sentence is required, Ramel suggests that we must reverse and remand for resentencing if the circuit fails to explain why it also decides to impose a $1000 fine. Even more, no such error would lie if the circuit court explained that it felt *239 a fine was also appropriate as a debt to society, and then imposed a $15,000 fine, with no explanation of why it imposed that amount rather than a $1000 fine. That kind of rule seems intuitively unsound to me.
¶56 Rather than Gallion ize each individual component, perhaps the best approach is to apply Gallion to the big picture. More than this may put too large a burden on circuit courts. In fact, it may even have the opposite effect than was designed. Gallion 's stated objective was to avoid mere incantation of "magic words," but when we require circuit courts to spell out in too much detail something that is more art than science, we may be pushing circuit courts back to just checking boxes and saying the right things. While I certainly would commend and applaud a specific conversation related to the imposition of a criminal fine, I question the need to craft a universal rule requiring circuit courts to do so in every case. Here, the circuit court commendably explained the reasons for its global sentencing decision, which at the very least appears to satisfy the spirit, if not the letter, of Gallion . Perhaps no more should be required.
¶57 As sympathetic as I am to outcome occasioned by the majority's decision, I cannot escape the conclusion that the law dictates a different outcome. While I believe the majority's decision is reasonable and supportable from a prudential standpoint, I am unable to square its holding with language of Ramel , which straightforwardly concludes "that under Gallion some explanation of why the court imposes a fine is required," and rejects the contention that a global sentencing rationale alone is sufficient to cover both incarceration and a fine. Ramel , 306 Wis. 2d 654, ¶¶14, 22, 743 N.W.2d 502. Some explanation is required on the record-an explanation that guidelines were being *240 relied on and why the guidelines were relied on would be sufficient, for example. See id. , ¶24. But here, no such explanation is found. After a thoughtful sentence setting forth its larger rationales, the circuit court's complete comment on the fine was "$1900 fine." And then at the end it clarified, "Other court costs and did I say the $1900 fine? If I didn't, $1900 fine." Even if the majority is correct that this was based on sentencing guidelines, this linkage is not present on the record and therefore runs afoul of Ramel .
¶58 We are not permitted to overrule our prior cases, by subtlety or otherwise. By publishing this decision, the majority renders Ramel a dying, if not dead, letter. Appellate courts will just search the record for implied and unstated rationales for imposing a criminal fine, the majority instructs. "$1900 fine" is enough-if we can discern that it was probably based on sentencing guidelines. If that were the law that governs us, I would agree. But I do not believe Ramel permits that conclusion. For these reasons, I respectfully dissent from the majority's decision to devise an unstated and implied rationale not briefed by the parties in an effort to sustain the circuit court's imposition of a fine.

Although the offense occurred in March 2015, the applicable penalties were contained in the 2013-14 version of the Wisconsin Statutes, and therefore all statutory references are to that version unless otherwise noted.

Other factors may include criminal record, undesirable behavioral history, personality and social traits, presentence investigation report, degree of culpability, demeanor before the court, age, educational background, employment record, remorse, cooperativeness, need for close rehabilitative control, rights of the public, and length of pretrial detention. State v. Ziegler , 2006 WI App 49, ¶23, 289 Wis. 2d 594, 712 N.W.2d 76.

The chief judge of each judicial district "shall adopt guidelines ... for the consideration of aggravating and mitigating factors." Wis. Stat. § 346.65(2m)(a).

We may take judicial notice of public records. See Wis. Stat. § 902.01(2)(b), (3) (2015-16); State v. Ramel , 2007 WI App 271, ¶24 n.9, 306 Wis. 2d 654, 743 N.W.2d 502.

As noted, the maximum fine for a seventh offense is $25,000. Wis. Stat. §§ 346.65(2)(am)6., 939.50(3)(g). For a seventh offense, if mitigating factors predominated and the BAC registered less than 0.08, the guidelines recommend a $1400 fine and confinement of thirty-six to forty-eight months; if aggravating factors predominated and the BAC exceeded 0.25, they recommend a $7000 fine and confinement of fifty-four to sixty months. Wis. Third Judicial Dist. OWI/PAC Sentencing Guidelines , Seventh-Ninth Offense ( Third Judicial Dist. OWI/PAC Sentencing Guidelines Comm. 2015).

Had the circuit court simply reversed the order of announcing the length of confinement and the fine, there would be no question that the court's sentencing colloquy was applicable to both.

We see no trend, unlike the Dissent, towards dividing up a criminal sentence and requiring explicit rationales for each component. See Dissent, ¶46. The Dissent, as an example, cites to State v. Cherry , 2008 WI App 80, ¶¶9-10, 312 Wis. 2d 203, 752 N.W.2d 393, where we held that the circuit court's explanation for imposing a DNA surcharge (to support DNA database costs) was insufficient as it applied to a second surcharge. Ziller distinguished Cherry based on the facts of that case, just as was done in Ramel , where the record simply does not show any basis for the second surcharge or fine, respectively. Neither Cherry nor Ramel required a new rule.

Vesper does not dispute that he will have 110 months to pay the fine. Neither party addresses whether Vesper's reconfinement of more than four years will effectively extend the time for payment.

State v. Gallion commands that the days of "implied reasoning rather than ... an on-the-record explanation" are over. State v. Gallion , 2004 WI 42, ¶50, 270 Wis. 2d 535, 678 N.W.2d 197. Instead, "[t]he rationale for sentencing decisions must be made knowable and subject to review" by being "on the record." Id. , ¶51.

See Gallion , 270 Wis. 2d 535, ¶8, 678 N.W.2d 197 ("Accordingly, we reaffirm the sentencing standards established in [McCleary v. State , 49 Wis. 2d 263, 182 N.W.2d 512 (1971) ] and determine that the application of those standards, demonstrating the exercise of discretion, must be set forth on the record for future cases.").

Prior to the legislature's 2014 amendment to Wis. Stat. § 973.046, "the court could, in its discretion, impose a DNA surcharge." State v. Radaj , 2015 WI App 50, ¶¶8-9, 363 Wis. 2d 633, 866 N.W.2d 758. The amended statute now requires the circuit court to impose a DNA surcharge any time the "court imposes a sentence or places a person on probation." Sec. 973.046(1r).

In Kuechler , the circuit court explicitly relied on the sentencing guidelines (unlike in this case). The circuit court stated that Kuechler should "pay a fine, according to the guidelines , which is $8,852." State v. Kuechler , 2003 WI App 245, ¶5, 268 Wis. 2d 192, 673 N.W.2d 335 (emphasis added). The circuit court also "explained its reasons for imposing the guidelines" more generally. Id. , ¶3.

In fact, though it is not necessary to its conclusion, the majority goes even further and creates a more obvious conflict with Ramel . After attempting to justify the circuit court's decision by implied reliance on the guidelines, the majority proclaims that it actually does not matter at all whether the court in fact relied on the guidelines. Majority, ¶18. The majority claims that "even without explicit or implicit reliance on the sentencing guidelines," the court's general discussion of "the sentencing objectives and relevant factors" was a sufficient on-the-record explanation of the criminal fine. Majority, ¶18. Thus, according to the majority, a sentencing court is not required to give any explanation for why it imposed the fine other than list the sentencing objectives and factors. This directly contradicts Ramel 's clear holding that "some explanation of why the court imposes a fine is required," and the court's global sentencing remarks alone are insufficient. See State v. Ramel , 2007 WI App 271, ¶¶14, 22-24, 306 Wis. 2d 654, 743 N.W.2d 502. Relying on the guidelines is sufficient because the guidelines contain the reasons for the fine based on the specific aggravating and mitigating factors in each case. "[S]ome explanation" cannot be interpreted to mean "no explanation at all."

If this is not a clarification and is, as the majority suggests, merely an application of "the well-established rule that a reviewing court must search the record to determine if it supports the circuit court's sentencing decision," see Majority, ¶24, then publication is inappropriate. The fact that the majority is publishing this decision suggests it is clarifying indeterminacy of some sort.

This very concern was raised in Justice Wilcox's concurrence in Gallion . See generally Gallion , 270 Wis. 2d 535, ¶¶80, 94, 678 N.W.2d 197 (Wilcox, J., concurring).