COURT OF APPEALS
DECISION
DATED AND FILED

December 9, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2023AP650-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2020CF434

IN COURT OF APPEALS
DISTRICT III

---

STATE OF WISCONSIN,

   PLAINTIFF-APPELLANT,

V.

JEREMY L. GUY,

   DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for Marathon County: SUZANNE C. O'NEILL, Judge. *Reversed and cause remanded with directions*.

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.    The State of Wisconsin appeals an order granting, in part, Jeremy L. Guy's postconviction motion seeking modification of his

sentence for a false imprisonment conviction, of which he was found guilty at a jury trial.[1] The State argues that the postconviction court erred by concluding that Guy had shown that the revocation of his extended supervision and reconfinement in a different case constituted a new factor for purposes of sentence modification in this case.

¶2 For the reasons that follow, we agree with the State. Accordingly, we reverse the postconviction court's order modifying Guy's sentence and remand the case for the court to reinstate the original sentence.

## BACKGROUND

¶3 In May 2020, the State charged Guy with second-degree sexual assault, burglary, and false imprisonment, all as a repeater and all as acts of domestic abuse. According to the criminal complaint, Guy broke into the victim's residence, did not allow her to leave her home, and sexually assaulted her. At the time he was charged, Guy was on extended supervision in Marathon County Circuit Court Case No. 2003CF611, in which he was convicted of five counts of burglary.

¶4 In June 2020, the Department of Corrections ("DOC") sought to revoke Guy's extended supervision in Case No. 2003CF611 as a result of the sexual assault charge and a violation of a no-contact provision in his supervision

---

[1] The Honorable Gregory B. Huber presided over Guy's jury trial and sentencing. The Honorable Suzanne C. O'Neill entered the order granting in part Guy's postconviction motion for sentence modification. In this opinion, we refer to Judge Huber as the "sentencing court" and to Judge O'Neill as the "postconviction court."

rules.[2]  The Administrative Law Judge ("ALJ") did not find that Guy sexually assaulted the victim.  Guy, however, did not contest the violation of the no-contact provision, so the ALJ revoked Guy's supervision and ordered him reconfined for 18 months.  Following an administrative appeal, the Division of Hearings and Appeals reversed the ALJ's order revoking Guy's supervision.

¶5      In June 2021, following a four-day jury trial on the May 2020 charges, the jury found Guy guilty of false imprisonment as a repeater and as an act of domestic abuse, but it found him not guilty of the other two charges.  The sentencing court ordered a presentence investigation report ("PSI"), which recommended a prison sentence consisting of three years of initial confinement followed by two years of extended supervision.[3]  The PSI also noted that Guy had completed the Earned Release Program ("ERP") in Case No. 2003CF611 and had been released early to extended supervision in March 2019.[4]

¶6      At the August 2021 sentencing hearing, the State addressed Guy's character by reviewing his criminal history, which included the five burglary convictions in Case No. 2003CF611.  The State also noted that Guy had been released to extended supervision in March 2019 after completing the ERP, but it

---

[2]  The DOC agent's supervision notes show that Guy had been in a relationship with three women, and, in April 2020, all of them had requested that Guy have no contact with them.

[3]  An alternative PSI was also prepared.

[4]  The ERP is a substance abuse program administered by the DOC.  WIS. STAT. §§ 302.05(1)(am), 973.01(3g) (2023-24).  An inmate who successfully completes the program will obtain early release from the confinement portion of his or her sentence and have the remaining portion added to the extended supervision portion of his or her sentence.  *See* § 302.05(3)(c)1.-3. (2023-24).

All references to the Wisconsin Statutes are to the 2023-24 version.

commented that the program "did not have much impact on [Guy] given [Guy's] performance on supervision since his release." The State then highlighted Guy's conduct following his release to extended supervision, noting his dishonesty with his supervision agent and his manipulative conduct with the multiple women with whom he had relationships after his release. The State recommended a ten-year prison sentence, consisting of seven years of initial confinement followed by three years of extended supervision. The defense requested a four-year period of probation.

¶7    Following the State's argument, the sentencing court asked whether Guy's extended supervision had been revoked or whether he had completed the term of extended supervision. The State responded that Guy was still on extended supervision. Guy's trial counsel added that Guy "did not get revoked for these allegations—for the allegations at the time. They did not revoke him. They did not find it—they did not find it credible."

¶8    The sentencing court began its sentencing comments by addressing the gravity of the offense, stating that the false imprisonment conviction, with the repeater and domestic abuse enhancers, was "a serious offense that carries with it serious consequences." As to the protection of the community, the court noted that even though Guy had not physically harmed anyone, he inflicted grave psychological harm "on at least two women that testified at trial and wrote letters" to the court. The court specifically noted the harm on the victim, stating that Guy had "severely upended her life, her sense of trust." For these reasons, the court concluded that the community needed protection from Guy "inflicting more psychological and emotional harm and mental harm on other people."

¶9 The sentencing court next looked at Guy's character, stating that what "jumped out" at it was that Guy "completed the ERP program and got released early, and yet within a short period of time, relatively speaking, he is back in trouble here." The court recognized that Guy had complied with his extended supervision rules by meeting with his agent, but at the same time, Guy had lied to his agent and many others. The court also commented that Guy had "unstable living arrangements, work arrangements, and basically the gist of it is he was using these women to take care of him." The court thus described Guy's character as "that of a manipulator who just cares about his own needs" and who tells "people what they want to hear." The court further added that Guy was given a fresh start through the ERP, but he did not take advantage of it and instead abused the opportunity and "created more problems for himself and severely impacted other people in doing so."

¶10 Given Guy's character, the seriousness of the offense, and the psychological and mental harm that Guy inflicted, the sentencing court found that "probation would unduly depreciate the seriousness of this offense." Thus, the court imposed a prison sentence of six and one-half years, consisting of three and one-half years of initial confinement followed by three years of extended supervision, to be served consecutive to any other sentence.

¶11 A few months later, in December 2021, the DOC again sought to revoke Guy's extended supervision in Case No. 2003CF611, relying on the conduct that resulted in the charges and conviction in this case. This time, the DOC revoked Guy's extended supervision, the Division of Hearings and Appeals did not reverse the order, and Guy was reconfined for three and one-half years.

¶12    In September 2022, Guy filed a postconviction motion seeking sentence modification in this case based on a new factor.[5]  Guy argued that his second revocation and subsequent reconfinement constituted a new factor because Guy's revocation was not known to the sentencing court at the time of his sentencing, as he had not yet been revoked.  Guy contended that his second revocation and subsequent reconfinement were highly relevant to the sentence the court imposed because the court had inquired about Guy's supervision status at the sentencing hearing; the second revocation involved "punishment for the same underlying conduct, albeit in a different context"; and "the court ordered that the sentence [in this case] be served consecutive to any other sentence."  Guy further asserted that his alleged new factor justified modifying his sentence in this case to run concurrent with, instead of consecutive to, his reconfinement term.

¶13    The postconviction court granted Guy's motion to modify his sentence, concluding that Guy had established a new factor by clear and convincing evidence.  Specifically, it found that the sentencing court "explicitly asked the parties prior to imposing sentence whether the defendant was currently on supervision and if his supervision had been revoked."  Based on the responses the sentencing court received, the postconviction court found that the sentencing court "understood that [Guy's] supervision was not revoked and reasonably would have inferred that [his] supervision would not be revoked in the future for criminal

---

[5] Guy alternatively sought resentencing on the grounds that the PSI author was biased and that the PSI contained inaccurate information on which the sentencing court relied.  Guy also sought a new trial on the grounds that the sentencing court erroneously admitted certain testimony from the victim at trial and in the interest of justice.  Given that the postconviction court granted Guy's sentence modification motion, it did not address the resentencing claims, but it denied relief on the remaining claims for a new trial.  Guy has not filed a cross-appeal challenging the postconviction court's decision with respect to those issues.  *See* WIS. STAT. RULE 809.10(2)(b).  Therefore, we do not address those arguments further.

conduct for which the court was imposing a sentence." The postconviction court further found that knowledge of Guy's subsequent reconfinement for three and one-half years as a result of a new revocation proceeding "would have impacted the [sentencing] court's analysis as to the incarceration time needed to address the identified sentencing objectives."

¶14 The postconviction court therefore concluded that Guy's second revocation and subsequent reconfinement justified modifying his sentence. Before modifying the sentence, however, the court scheduled a hearing to allow the victim an opportunity to be heard on Guy's requested modification. Following that hearing, the court modified Guy's sentence to run concurrent with any other sentence he was currently serving. The State appeals.

## DISCUSSION

¶15 A sentence modification determination is a two-part inquiry, requiring the defendant to show "both the existence of a new factor and that the new factor justifies modification of the sentence." *State v. Harbor*, 2011 WI 28, ¶¶36, 38, 333 Wis. 2d 53, 797 N.W.2d 828. The defendant must show the existence of a new factor by clear and convincing evidence. *Id.*, ¶36. If the defendant makes this showing, the circuit court then determines whether that new factor justifies modifying the defendant's sentence. *Id.*, ¶37. On appeal, the State challenges only the postconviction court's conclusion that Guy showed the existence of a new factor by clear and convincing evidence. The State does not dispute that if Guy showed the existence of a new factor, the postconviction court did not erroneously exercise its discretion by modifying Guy's sentence.

¶16 Thus, we address only whether Guy showed the existence of a new factor by clear and convincing evidence, which is a question of law that we review

7

de novo. *See* ***State v. Vesper***, 2018 WI App 31, ¶38, 382 Wis. 2d 207, 912 N.W.2d 418. A new factor is defined as "a fact or set of facts highly relevant to the" sentence imposed, but not known to the circuit court at the time of sentencing, "either because it was not then in existence or because, even though it was then in existence, it was unknowingly overlooked by all of the parties." ***Harbor***, 333 Wis. 2d 53, ¶40 (citation omitted).

¶17    A subsequent revocation "in another case does not ordinarily present a new factor." *See* ***State v. Norton***, 2001 WI App 245, ¶10, 248 Wis. 2d 162, 635 N.W.2d 656, *abrogated on other grounds by*, ***Harbor***, 333 Wis. 2d 53; ***Vesper***, 382 Wis. 2d 207, ¶42. However, a subsequent revocation in another case may be a new factor when all the parties at the time of sentencing understood that a defendant would not be revoked in the other case, either at that time or subsequent to sentencing, as a result of the offense for which sentence was being imposed. *See* ***Norton***, 248 Wis. 2d 162, ¶10. In other words, a subsequent revocation in another case is a new factor when the specific circumstances of a case show that a subsequent revocation is highly relevant to the sentence imposed. *See* ***id.***, ¶13.

¶18    For example, in ***Norton***, we held that the defendant had shown his probation revocation in another case was highly relevant to the sentence imposed because his revocation status was discussed at sentencing. ***Id.***, ¶¶10-13. In ***Norton***, the defendant's agent informed the circuit court at sentencing that the defendant's probation in another case, which included a stayed nine-month sentence, would not be revoked. ***Id.***, ¶¶3-4. The State "was upset" by that decision, and the court questioned the agent about the DOC's decision and reasons for not revoking the defendant's probation. ***Id.***, ¶11. After discussing the need to send the defendant "to prison for a sufficient period of time so that he could receive drug treatment," the court imposed a 42-month prison sentence, to be

served consecutively to any other sentence. *Id.*, ¶¶4-5, 11. Following the sentencing, the defendant voluntarily submitted to the revocation of his probation based on his agent's erroneous advice that the 9-month stayed sentence could be served concurrently with the 42-month sentence. *Id.*, ¶12.

¶19    Given the sentencing discussion regarding the agent's decision not to revoke the defendant's probation and the fact that the circuit court sought to impose a sufficiently long sentence for the defendant to receive drug treatment, we concluded that the court understood and believed that the nine-month stayed sentence would not be an issue when it imposed its sentence. *Id.*, ¶13. Because the fact of the defendant's probation and whether it was going to be revoked factored into the court's imposition of its sentence, we held that those circumstances constituted a new factor and an exception to the rule that revocation in another case is not ordinarily a new factor. *Id.*, ¶¶10, 13.

¶20    In contrast, in *Vesper*, we held that the defendant failed to show that his subsequent reconfinement resulting from the revocation of his extended supervision was highly relevant to the sentence the court imposed. *See Vesper*, 382 Wis. 2d 207, ¶42. In *Vesper*, the circuit court at sentencing commented that the defendant "drove drunk shortly after being released from prison for his sixth OWI conviction" and that he "was still on extended supervision at the time." *Id.*, ¶4. The court ultimately sentenced the defendant to 50 months of initial confinement followed by 5 years of extended supervision to be served consecutively to any other sentence. *Id.*, ¶5. The defendant's extended supervision for the sixth OWI offense was subsequently revoked, and he was reconfined for four years and four days. *Id.*, ¶6.

¶21     We noted that because the circuit court mentioned that the defendant was on extended supervision, it knew the defendant would be subject to reconfinement. *Id.*, ¶42. We explained that despite this knowledge, the court "did not suggest that the length of a possible reconfinement was relevant to" its sentencing decision because it had ordered the defendant's sentence to run consecutive to whatever sentence he was then serving. *Id.* Thus, we concluded that the defendant had not clearly and convincingly shown that his revocation and potential reconfinement constituted a new factor. *Id.*

¶22     The State argues that Guy's case is unlike the defendant's case in *Norton* because "there is little in the record to show that Guy's subsequent revocation and reconfinement [are] highly relevant to the imposition of sentence." The State asserts that the sentencing court simply asked about Guy's extended supervision status, but it did not mention "in its explanation of sentence or at any point in the [sentencing] hearing whether or not it believed Guy still faced on[]going exposure to revocation in the other case."

¶23     In response, Guy argues that the State and the sentencing court discussed Guy's conduct while on extended supervision. He also points to the sentencing court's question regarding Guy's extended supervision status and to a portion of the PSI describing how supervision violations would be addressed as evidence that his revocation status was highly relevant to the sentence the court imposed.[6] Based on these two pieces of evidence, Guy contends that it was

---

[6] The PSI language on which Guy relies is from the PSI's "Anticipated Supervision Plan" portion, which states that the DOC would continue to supervise Guy and that if Guy violated any supervision rules, those violations "would be addressed in a swift manner with the appropriate sanctions consistent with established policies and procedures."

reasonable for the sentencing court to infer that he would not be revoked based on his conduct in this case and to design a sentence based on that information.

¶24    While both parties advance reasonable arguments, we deem the legal standard imposed on Guy as dispositive and against his position.  Namely, we conclude that Guy failed to show *by clear and convincing evidence* that his second revocation of extended supervision and subsequent reconfinement in another case constituted a new factor.  In particular, his evidence does not clearly and convincingly show that Guy's revocation status was highly relevant to the sentence that the sentencing court imposed.

¶25    The sentencing court mentioned Guy's revocation status only once—when it asked whether Guy's extended supervision had been revoked or whether he had completed the term of supervision.  The State's and defense counsel's responses informed the court that Guy remained on extended supervision and that his extended supervision had not been revoked because the allegations in this case were found not credible.  In contrast to *Norton*, where all the parties discussed in detail the reasons why the defendant's probation was not revoked, the sentencing court here did not inquire further about the revocation proceedings, whether Guy would be subject to revocation once more based on the conviction, or how future violations of supervision rules would be addressed.

¶26    In addition, the sentencing court did not mention Guy's revocation status in its sentencing remarks.  The court noted only that Guy had been released early to supervision as a result of the ERP but that he had not taken advantage of that "fresh start" and had instead created more problems for himself.  Thus, Guy's case is more similar to *Vesper* in that the sentencing court mentioned Guy's extended supervision but at no point suggested that a subsequent revocation of

extended supervision and reconfinement—as a result of either the false imprisonment conviction or entirely new charges—factored into its sentencing decision. The language from the PSI describing how the DOC would address future violations adds nothing to support the conclusion that the court itself considered Guy's revocation status in its sentencing decision, and Guy fails to explain how it does so.

¶27 In short, the sentencing court's mere questioning about Guy's revocation status and mentioning in its remarks that he had been released early to extended supervision are insufficient to show by clear and convincing evidence that Guy's second revocation and subsequent reconfinement were highly relevant to the sentence the court imposed.

¶28 Guy contends that the State "pressed" the sentencing court to consider Guy's conduct while on supervision and that the court considered Guy's conduct on supervision by finding that probation would unduly depreciate the seriousness of the offense. Although the court considered Guy's conduct while on supervision when addressing his character, that focus does not mean the court considered his revocation status in its sentencing decision or that his status was relevant to imposing its sentence. Guy's conduct while on supervision and whether his extended supervision had been revoked based on that conduct are two different things, and Guy did not allege that his conduct while on supervision was a new factor. Nor could he, as the sentencing court addressed that issue at the sentencing hearing. Thus, the fact that the court considered Guy's conduct while on supervision in its calculus of the proper sentencing factors is not evidence that Guy's revocation status itself was highly relevant to the sentence the court imposed.

¶29    Guy further argues that the sentencing court's decision to impose a consecutive sentence demonstrates that the court's analysis would have been different if it had known Guy would be reconfined for three and one-half years. Guy contends that the imposition of a consecutive sentence shows that the court "understood that Guy would begin serving out the sentence without delay attributable to a prior reconfinement term then in existence. If Guy were to be revoked and subject to reconfinement in the future, it was unlikely to be for reasons related to the underlying complaint."

¶30    As the State points out, however, if the sentencing court had wanted to ensure that Guy immediately started serving his sentence in this case, without additional confinement time resulting from a subsequent revocation or a different sentence, the court would have imposed a concurrent, rather than a consecutive, sentence. Furthermore, as in *Vesper*, the imposition of a consecutive sentence suggests that the possibility of reconfinement following revocation of Guy's extended supervision was not relevant to the sentence that the court imposed. Rather, the sentence structure tends to show that the sentencing court intended Guy to serve the three and one-half years it imposed for the false imprisonment conviction regardless of confinement time in any other sentence, including any possible reconfinement sentence.

¶31    It is neither known nor knowable whether the sentencing court's sentence would have been different if it had known that Guy's extended supervision would be revoked and he would be reconfined for three and one-half years. The most the court knew at the time of sentencing was that the DOC had unsuccessfully sought to revoke Guy, but it also knew that Guy remained on extended supervision. There were no clear assurances by the DOC that it would not try to revoke Guy again based on the false imprisonment conviction, as there

were in *Norton*, and Guy does not point to anything suggesting that all parties understood the DOC would not try again to do so. Without such evidence from the sentencing record, we cannot reasonably determine whether the sentencing court did or did not believe Guy would be later revoked, much less if that determination affected its sentence.

¶32 In sum, Guy has not shown by the requisite clear and convincing evidence that his subsequent revocation of extended supervision and reconfinement constitute a new factor. Therefore, we reverse the postconviction court's order granting Guy's motion for sentence modification and remand the case for the court to reinstate Guy's original sentence.

*By the Court.*—Order reversed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.